FILED

2013 Jul-05 AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| KAREN BLAISE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>LINCOLN NATIONAL LIFE )<br>INSURANCE COMPANY, )<br>)<br>)<br>Defendant. ) | CASE<br>NUMBER:_____ |

## COMPLAINT

Comes now the Plaintiff, Karen Blaise, and hereby files her Complaint against Lincoln National Life Insurance Company ("Lincoln").

## PARTIES

1.     The Plaintiff, Karen Blaise ("Blaise"), was a participant in an ERISA-governed plan and was denied long-term disability benefits due to her under the terms of the plan.

2.     Defendant, Lincoln National Life Insurance Company is the Administrator of Long-Term Disability Policy No. 00001012361400000 ("the Plan") that has improperly denied owed benefits to Ms. Blaise. Upon information and belief, Lincoln National Life Insurance Company is a Nebraska corporation doing business in the State of Alabama.

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiff asserts claims for long-term disability benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. §1132.  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §1132(a), (e)(1) and (f) and 28 U.S.C. §1331. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

4.     The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans". *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983).  Ms. Blaise, as an employee insured for disability, was supposed to be treated as a beneficiary by Lincoln as statutory fiduciary.   Instead, Lincoln has victimized Ms. Blaise by engaging in utterly reprehensible claim handling procedures.  The shortcomings of ERISA as it relates to claims for "welfare" benefits have been exploited by Lincoln to avoid paying Ms. Blaise's valid claim that would otherwise be payable under state insurance law.  With no jury trial and no punitive damages, despite the unscrupulous conduct of Lincoln, Ms. Blaise's "relief" is limited to the amount of benefits to which she was clearly entitled in the first place with merely the possibility of interest and

2

attorney's fees.  As described in more detail below, Lincoln has clearly engaged in bad faith claim handling and Ms. Blaise, at minimum, is patently entitled all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Ms. Blaise is an insured under Long Term Disability ("LTD") Policy No. 00001012361400000, sponsored by LRP Publications.     Lincoln is the Administrator of the policy.  The policy provides insureds, like Ms. Blaise, long term disability benefits.

6.     Ms. Blaise has a ninth grade education. She has primarily worked as a housekeeper in both commercial and residential settings since the age of seventeen. Her job with LRP Publications was a private housekeeper/launder in a 22,000 square foot home − a position she held until her disabilities forced her to stop working in July 2010.

7.     The occupation of General Home Worker is a medium physical capacity occupation in the national workforce.  Medium work is considered to require maximum occasional lifting of up to 50 pounds with frequent lifting of up to 25 pounds and standing/walking a minimum of 6 out of an 8-hour day.

8.     Ms. Blaise's medical disabilities include: thoracic and lumbar spine sprain, bulging lumbrosacral discs and annular tearing, degenerative disc disease, right knee pain and swelling, thyroid disease, hypothyroidism, tenosynovitis of

fingers, Finkelstein disease in right hand/wrist, depression, and anxiety.   The symptoms of these ailments render Ms. Blaise unable to perform her job duties. Furthermore, the medications she must take to treat these conditions leave her lightheaded, dizzy, and tired. They also cause her to experience blurred vision, loss of appetite, and increased anxiety and depression.   These conditions further disabled Ms. Blaise from continuing at her job.

9.    Ms. Blaise applied for disability benefits with Lincoln under her LRP Publications group plan.  In a letter dated February 22, 2011, Lincoln improperly found that Ms. Blaise did not meet the Policy definition of disabled and denied her claim on the basis that the medical information provided did not demonstrate a severity of impairment that prevented Ms. Blaise from performing her job. (Lincoln's February 22, 2011 letter is attached hereto as Exhibit "A").  The term severity of impairment is an amorphous concept, does not lend itself to objective criteria, and Plaintiff would allege the term is used as an improper test of disability.

10.    Lincoln's denial letter is riddled with attempts to "cherry-pick" the record for evidence that supports their denial and ignores the plethora of evidence that supports Ms. Blaise's disability.  For example, the letter states:

> According to the information contained in your claim file, you
> stopped working due to a diagnosis of thoracic spine sprain/lumbar
> spine sprain....The x-rays of 8/10/2010, of the thoracic spine indicate
> the pedicles were intact and there was no paravertebral swelling seen.
> It showed the alignment was within normal limits and there was no
> acute fracture deficit seen...The MRI dated 2/17/2010 of the lumbar

4

spine showed bulging disc with facet reaction at L3-4 and L4-5 levels, but the age of this injury was unable to be determined.

11.     The medical records from Dr. Don Corpus, M.D. an independent physician examiner for her workers' compensation claim, gave Ms. Blaise specific limitations and restrictions on her ability to return to work. The limitations included: no bending, no carrying over 20 pounds, no climbing, no lifting from floor to waist, no lifting from waist to overhead, no pushing, no pulling, no overhead reaching, no squatting, no twisting and no sitting, standing, or walking for more than 30 minutes without a break. On August 19, 2010, Dr. Corpus further restricted Ms. Blaise to no carrying over 5 pounds with all plus all of the previous restrictions.  He also transferred her care to an orthopedic spine specialist due to worsening pain caused by bulging discs and annular tears. (See Dr. Corpus/Workers' Comp records attached hereto as Exhibit "B").

12.     Dr. Donald Tindall of the Florida Occupational Medicine Services exam notes from July 24, 2011, support Ms. Blaise's claim. After reviewing her medical records and performing a physical examination, Dr. Tindall reached this result: "[Ms. Blaise] has chronic low back pain and radicular pain most likely multi-factorial including an L5-S1 bulging disc and annular tear, multilevel degenerative disc disease, multilevel facet arthropathy, and possibly sacrolidiac syndrome. Ms. Blaise has de Quervain's tenosynovitis of the right wrist, flexor tenosynovitis of the left index finger, and right knee pain which could be due to

arthritis. Ms. Blaise has objective findings consistent with her subjective complaints." (See Tindall summary attached hereto as Exhibit "C"). Of course, even this statement would not satisfy Defendant's alleged "severity of impairment" test for disability.

13. Dr. Danielle M. Francis, an orthopedic specialist, examined Ms. Blaise on September 14, 2011 and concurred with Dr. Tindall's summary noting the generalized tenderness in her vertebrae, paravertebral muscles, and SI joints. Dr. Francis diagnosed Ms. Blaise with degeneration of lumbar or lumbrosacral intervertebral disc, lumbrosacral spondylosis, displacement of lumbar intervertebral disc, and unspecified neuralgia, neuritis, and radiculitis. (See Francis records attached hereto as Exhibit "D")

14. On or about October 20, 2011, Ms. Boyd underwent a psychological evaluation with Brian Boyd, Ph.D. He noted that Ms. Blaise suffered from adjustment disorder with depression and anxiety. (See Boyd summary attached hereto as Exhibit "E")

15. In spite of the medical records and recommendations provided by Ms. Blaise's doctors, Lincoln denied Ms. Blaise's appeals and issued the final denial by letter dated December 21, 2011, attached hereto as Exhibit "F". Ms. Blaise has now exhausted her appeal rights under ERISA.

16.    As of this date, Ms. Blaise has been denied benefits rightfully owing to her under the policy.  Lincoln's decision to deny benefits under her long-term disability policy was grossly wrong, without basis and contrary to the evidence.

17.    Ms. Blaise has met and continues to meet the policy's definition of disabled.

18.    The Defendant did not establish and maintain a reasonable claim procedure or provide a full and fair review of Ms. Blaise's claim as required by ERISA.  Instead, Defendant acted only in its own pecuniary interests and violated ERISA by conduct including but not limited to the following: reviewing the claim in a manner calculated to reach the desired result of denying benefits; failing to properly consider and credit the medical opinions of Ms. Blaise's medical providers; failing to perform a proper vocational analyses; failing to have Ms. Blaise undergo an exam by its physicians; and failing to establish, maintain and timely provide complete and current plan documents.

19.    Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Lincoln or to any other entity who may have adjudicated Ms. Blaise's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

7

20.     Upon information and belief, Lincoln both evaluated and paid all claims under the LTD Plan as issue, creating an inherent conflict of interest.

21.     Ms. Blaise has exhausted any applicable administrative review procedures and Lincoln's refusal to pay benefits is both erroneous and unreasonable and has caused tremendous financial hardship on plaintiff.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

**A.     Lincoln's Determination that Plaintiff does not Meet the Definition of Disability as Stated in the Policy was both Erroneous and Unreasonable.**

22.     The LTD Plan at issue states the following:

Disabled under the LTD Plan means:

1.     During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.

2.     After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education, or experience will reasonably allow.

Own Occupation or Regular Occupation means the occupation, trade, or profession:
1. In which the Insured Employee was employed with the Employer prior to Disability; and
2. Which was his or her main source of earned income prior to Disability.

Main Duties or Material and Substantial Duties mean those job tasks that:

1. Are normally required to perform the Insured Employee's Own Occupation; and
2. Could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards, whether or not:
1. The Employer is subject to the Act; or
2. The Insured Employee has requested such a job accommodation.

Main Duties include those job tasks:
1. As described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2. As performed in the general labor market and national economy.

Main duties are not limited to those specific job tasks as performed for a certain firm or at a certain work site.

(See Exhibit "G" LTD plan, attached hereto).

23.    In the final denial letter dated December 21, 2011, Exhibit "F",

Lincoln states,

[W]e have determined that your client's job as housekeeper is best defined as a General Home Worker (Housekeeper, Home), in the national workforce. The material and substantial duties of a General Home Worker include but are not limited to the following:

- plans meals and purchases food stuff and household supplies;
- prepares and cooks vegetables, meats, and other foods according to the employer's instructions or following own methods;
- serves meals and refreshments; washes dishes and cleans silverware;
- oversees activities of children, assisting them in dressing and bathing;

9

- cleans furnishings, floors, and windows, using vacuum cleaner, mops, broom, cloths, and cleaning solutions;
- changes linens and makes beds;
- washes linens and other garments by hand or machine, and mends and irons clothing, linens, and other household articles, using hand iron or electric ironer;
- answers telephone and doorbell;
- may feed pets.

Regarding physical capacity, a General Home Worker in the national workforce is a medium physical capacity occupation. The definition of medium work is maximum occasional lifting of up to 50 pounds with frequent lifting of up to 25 pounds and typically on feet a minimum of 6 out of an 8-hour day.

(See Exhibit "F" Final Denial Letter, pp. 2-3)

24.    Lincoln failed to properly evaluate the effects of Plaintiff's conditions on her ability to perform the duties of her own occupation. On August 10, 2010, Dr. Don Corpus, M.D., the independent physician examiner for her workers' compensation claim deemed her restrictions as follows: no bending, no carrying over 20 pounds, no climbing, no lifting from floor to waist, no lifting from waist to overhead, no pushing, no pulling, no overhead reaching, no squatting, no twisting and no sitting, standing, or walking for more than 30 minutes without a break. The independent physician examiner also indicated that there was a "specific, well-defined medical condition, with clear correlation between objective relevant physical findings and patients; subjective complaints. Treatment correlates to the specific findings." On August 19, 2010, Dr. Corpus further restricted Ms. Blaise to

no carrying over 5 pounds plus all of the previous restrictions.  Dr. Corpus again indicated that there was a "specific, well-defined medical condition, with clear correlation between objective relevant physical findings and patients; subjective complaints.  Treatment correlates to the specific findings."  He also recommended that Ms. Blaise's care be transferred to an orthopedic spine specialist.     (See Dr. Corpus/Workers' Comp records attached hereto as Exhibit "B").

25.     Notes in the claim file dated February 16, 2011, indicate that Lincoln had a nurse review Ms. Blaise's file to determine if she could perform the duties of her own occupation as an **executive housekeeper**.  <u>See</u> Lincoln notes attached hereto as Exhibit "H".   Interestingly, an executive housekeeper is a **light** physical capacity occupation.   See DOT Executive Housekeeper description, attached hereto as Exhibit "I".  In Lincoln's denial letter dated October 5, 2011 and again in the denial letter dated December 21, 2011, Lincoln stated that it had determined that Ms. Blaise's job as a housekeeper was best defined as a General Home Worker and in the national workforce that job is a **medium** physical capacity occupation. The DOT defines the physical demands – strength ratings of sedentary, light and medium work as follows:[1]

> S-Sedentary Work - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or

---

[1] See Appendix C: Components of the Definition Trailer - DOT Dictionary of Occupational Titles http://www.occupationalinfo.org/appendxc_1.html, last visited, May 20, 2013.

condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

L-Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

M-Medium Work - Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

26.    It appears that Lincoln never evaluated whether Ms. Blaise could perform her "own occupation" which was a **medium** physical capacity occupation as a General Home Worker. Instead, Lincoln had a nurse review the file and determine that she could perform a different occupation of Executive Housekeeper, a **light** physical capacity occupation.    The nurse's assessment is further questionable in that her "review" was based on the treatment records of Dr. Corpus, the independent physician examiner for Ms. Blaise's workers'

12

compensation claim, in which he indicated restrictions and limitations that would preclude Ms. Blaise from performing even sedentary work!

**B.     Lincoln's Decision to Deny LTD Plan Benefits was not Supported by Substantial Evidence.**

27.     Lincoln repeatedly claims that the medical information provided did not support restrictions and limitations that would render Ms. Blaise unable to perform her own occupation. (See Exhibit "F" Final Denial Letter dated 12/21/11). In its review of Ms. Blaise's claim, Lincoln claimed to have a medical consultant review the file in the denial letter dated February 22, 2011.  Though Plaintiff requested the opinions and findings of any medical professionals paid by Lincoln to review the claim, Lincoln's only provided the claim file containing notes dated 2/16/2011 where a nurse had determined it was "[r]easonable to allow initial 6 weeks from DOD for rest, treatment and recovery and then would need updated medical records from treating MD to review for ongoing functional status."  See Exhibit "H" Lincoln Notes dated 2/16/2011.

28.     In the denial of Ms. Blaise's appeal, Lincoln again claimed to rely on the findings of a medical consultant but did not identify the consultant nor any of his/her findings.  For the second level appeal, Lincoln claimed to have consulted Dr. Richard Tyler, M.D. to review Ms. Blaise's claim, however, Lincoln only identified this consultant in the final denial letter and did not produce his opinions and findings other than the partial quote below:

As part of the appeal review, we had Ms. Blaise's entire file reviewed by Dr. Richard Tyler, a Board-Certified Physician in Orthopedic Surgery. The findings of the physician consultant review were (in part) as follows:

> "Information in this file is exceedingly poor. That which is available indicates claimant has complained of back and right leg pain since pulling back on a rug while working on July 26, 2010. MRI of the lumbar spine has demonstrated bulging discs at multiple levels with annular tears at L5-S1 and S1-2. Neurological examination on September 14, 2011, nearly 14 months after the incident of July 26, 2010, was normal."

(See Exhibit "F" Final Denial Letter dated 12/21/11)

29.     Lincoln's decision to deny benefits is based entirely on the reports of its hired paper reviewer. Apparently, from the one paragraph statement from its medical consultant, Lincoln determined that the findings did not support long-term restrictions and limitations.

1.     <u>Lincoln's Failure to Obtain an IME and Rely Solely on Paper-Reviews then Deny Benefits on the Basis on Insufficient Evidence Was Arbitrary and Capricious.</u>

30.     Lincoln found that Ms. Blaise had no limitations or restrictions that would prevent her from performing her own occupation. Dr. Tindall, Dr. Francis, Dr. Boyd and the Dr. Corpus, the workers' compensation independent physician examiner, provided evidence of Ms. Blaise's conditions and limitations and restrictions caused by them. According to the Plan, Lincoln had the right to request that Ms. Blaise undergo an Independent Medical Exam, yet failed to do so. Various courts have addressed this very issue. *See Platt v. Walgreen Income Protection Plan for Store Managers*, 455 F. Supp. 2d 734, 746 (M.D. Tenn. 2006)

14

(administrator argued that it was justified in discrediting treating physician's diagnosis because treating physician had not provided adequate objective test results to support diagnosis and court rejected that argument, finding it "strange" that an administrator would rely on lack of evidence to deny claim but had declined to obtain an IME). *See Smith v. Continental Casualty Co.,* 450 F.3d 253, 264 (6th Cir. 2006) (holding that administrator's decision not to perform an independent medical examination "supports the finding that their determination was arbitrary.").

31.   A review of the entirety of Ms. Blaise's medical file shows that Ms. Blaise responded to Lincoln's information requests by providing the required information. Ms. Blaise's claim file, contains MRI test results and other objective evidence of her disability.  Ms. Blaise also put Lincoln on notice that her treatment was being limited by the workers' compensation insurer and that her attorney had filed a grievance with the company seeking authorization for treatment with an orthopedic spine specialist as recommended by their own, Dr. Corpus.  If Lincoln was not satisfied with the medical evidence provided by Ms. Blaise, it had the right to exam her, in accordance with the Policy. Considering the entire administrative record, Lincoln's denial of Ms. Blaise's claim cannot be said to have been the result of a reasoned decision-making process and is therefore arbitrary and capricious.

32.    The doctors who treated Ms. Blaise, who have no stake in the outcome of the case, and made their findings indicating limitations and restrictions that would prevent her from working based on actual examinations of Ms. Blaise. Lincoln's doctor, on the other hand, never examined the plaintiff. The conclusion that the plaintiff was not disabled was based merely on the IPC's review of the plaintiff's records - "accurate, but incomplete information." *Finazzi v. Paul Revere Life Insurance Company/Unum Provident Corp.,* 327 F. Supp. 2d 790, 795 (W.D. Mich. 2004). *See Hoover v. Provident Life and Accident Ins. Co.,* 290 F.3d 801, 809 (6th Cir. 2002) (finding that evidence in the administrative record did not support the revocation of benefits because the only doctors that disagreed with the treating physicians were non-examining consultants hired by the insurance company). *See Kalish v. Liberty Mutual,* 419 F.3d 501, 508 (6th Cir. 2005) (Whether a doctor has physically examined the claimant is indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician).

33.    In weighing the opinions of Ms. Blaise's physicians against that of the independent reviewer retained by Lincoln, the Court should considered the following factors: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) other relevant factors. *See*

16

*Karanda v. Connecticut Gen. Life Ins. Co., et al.,* 158 F. Supp. 2d 192, 205 and n.8 (D. Conn. 2000) (citing *Durr v. Metropolitan Life Ins. Co.,* 15 F. Supp. 2d 205, 213 (D. Conn. 1998)).  Lincoln's IPC's view directly contradicts the conclusions consistently reached by Ms. Blaise's treating physicians and the workers' compensation independent examiner.  Most fundamentally, Lincoln's IPC's view simply cannot be reconciled with the basic fact that Ms. Blaise's pursuit of pain relief was her sole motivation for seeking and submitting to nearly all of the treatment documented in her file.  Even if Lincoln could somehow overcome the inadequacy of the IPC's findings, the findings would still stand alone as the only such findings in the Administrative Record suggesting that Ms. Blaise might somehow have been able to return to work, and would remain overwhelmed by treatment records suggesting the opposite. Accordingly, no reasonable mind could accept as adequate the evidence upon which Lincoln relied to support its decision to deny Ms. Blaise's benefits.

34.    Although a court may not automatically accord special deference to a treating physician's opinion when reviewing a disputed ERISA claim, *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003), [7] a court also "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 834.  The Supreme Court has held that plan administrators are not required to accord special deference

to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). Plan administrators may not, however, "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 834. The Court has recognized that "treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient as an individual." *Id.* at 832. While *Nord* makes it clear that this court is not required to adopt a per se rule to treat physicians' opinions with more weight, "[c]ommon sense and a stream of legal precedent suggest, however, factual determinations of a treating physician are objectively more reliable." *Burt v. Metropolitan Life Insurance Co.,* No. 1:04-CV-2376-BBM, 2005 U.S. Dist. LEXIS 22810, at *33 (N.D. Ga. Sept. 16, 2005) (emphasis in original); *See also Finazzi,* 327 F. Supp. 2d at 795-96.

## C.   Lincoln Denied Plaintiff a Full and Fair Review Under ERISA

35.   Based solely on Ms. Blaise's file, Lincoln's IPC concluded that Ms. Blaise was not disabled. It is undisputed that Lincoln's IPC did not examine Ms. Blaise. Additionally, Defendants did not give Ms. Blaise an opportunity to address the IPC's findings before the final denial.

36.   Because Ms. Blaise was not permitted to respond the IPC's findings, which were relied on to deny her claim decision, she was denied a full and fair review of her claim under ERISA.

An employee benefit plan governed by ERISA must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

*29 U.S.C. § 1133.*

37.    Under Department of Labor regulations, a full and fair review includes the right to review "all documents, records, and other information relevant to the claimant's claim for benefits," and the right to an appeal that takes into account "all comments, documents, records, and other information submitted by the claimant relating to the claim." *29 C.F.R. § 2560.503-1(h)(2)(iii), (iv)*.

38.    It was improper for the Defendants to fail to provide Ms. Blaise with an opportunity to respond to all of the findings of Lincoln's IPCs. The Eighth Circuit addressed this issue in *Abram v. Cargill, Inc.,* 395 F.3d 882 (8th Cir. 2005). The Eleventh Circuit, in *Smith v. Cont'l Cas. Co.*, 616 F. Supp. 2d 1286, 1290 (N.D. Ga. 2007), agreed with and adopted the Eighth Circuit's reasoning in *Abram*.[2] In *Abram* the plaintiff was diagnosed with PPS, a progressive illness

---

[2] See, e.g., *Harris v. Aetna Life Ins. Co.*, 379 F. Supp. 2d 1366, 1374 (N.D. Ga. 2005) (Martin, J.) ("Plaintiff should be provided an opportunity to file any additional evidence that responds to or rebuts the contents of the examiners' reports before Defendant's further consideration of Plaintiff's claim for long-term disability benefits.").

commonly causing symptoms of fatigue, weakness, and pain. Despite job modifications, Abram's symptoms worsened, and she applied for long-term disability benefits under an ERISA plan. *Id.* at 883-84. Abrams' plan administrator denied the claim, concluding that there was insufficient objective medical evidence of permanent and total disability "from a 20 hour workweek, sedentary job." *Id.* at 884. Abram was sent by the plan administrator to examination by Dr. Gedan, for him to evaluate whether Abram was disabled by PPS. Dr. Gedan concluded that Abram was able to perform sedentary or light duty work. Dr. Gedan concluded that obesity and depression, and not PPS, caused Abram's symptoms. *Id.* Abram's treating physician disputed Dr. Gedan's conclusion, insisting that Abram was incapable of sedentary work. Without accepting any further submissions, the plan administrator concluded that Abrams was not disabled because she could perform sedentary work. *Id.* at 884-85.

39.    Abram appealed the decision. She submitted a functional capacity evaluation concluding that she could not consistently work more than twenty hours a week. She also submitted a letter from her employer clarifying that her job was a forty-hour per week position. The plan appeals committee reviewed this material and concluded that Abram could not work in a full-time position. They sent the new material to Dr. Gedan for review. *Id.* at 885.

40.    Dr. Gedan concluded that there was no reasonable medical explanation why Abram could not work eight hours per day. On the basis of Dr. Gedan's report, the plan administrator denied Abram's appeal, providing a copy of Dr. Gedan's report to Abram with the denial letter.

41.    The Eighth Circuit held that Abram was denied a full and fair review under ERISA. It concluded that the plan administrator should have permitted Abram to respond to Dr. Gedan's second report, and remanded the case for further consideration by the Plan. *Id.* at 886. The court reasoned that "full and fair review" requires "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Id.* (citations omitted). Because "ERISA and its accompanying regulations essentially call for a meaningful dialogue" between insurers and insureds "[p]lan procedures cannot be 'full and fair' without providing for this communication." *Id.* (citing *Marolt v. Alliant Techsystems, Inc.,* 146 F.3d 617, 620 (8th Cir. 1998). "Without knowing what inconsistencies the plan was attempting to resolve or having access to the report the Plan relied on, Abram could not meaningfully participate in the appeals process." *Id.*

42.    Sending an insured a medical report containing new reasons for claim denial and simultaneously declaring an end to the administrative process before

21

those reasons can be tested is the sort of "gamesmanship [that] is inconsistent with full and fair review." *Id.* (quotations and citations omitted). "There can hardly be a meaningful dialogue between the claimant and the Plan administrators if evidence is revealed only after a final decision. A claimant is caught off guard when new information used by the appeals committee emerges only with the final denial." *Id.*

43.     The Court in *Smith*, similar to the Court in *Abrams* found that Defendants' failure to provide Smith an opportunity to respond to the IPC's report, and particularly his claim--made without the benefit of examining or even meeting Smith in person--that Smith was not disabled, was inconsistent with the goal of "meaningful dialogue" between the parties and hampered the exchange of information required for a full and fair review. *Smith*, 616 F. Supp. 2d 1286, 1306. Ms. Blaise was also prevented from receiving a full and fair review of her claim in the same manner.

**D.     Lincoln Operated Under a Conflict of Interest In Processing Plaintiff's Claim that Significantly Affected Its Decision to Deny Benefits.**

44.     The record is replete with objective, clinical, evidence that the plaintiff suffers from thyroid disease, hypothyroidism, tenosynovitis of fingers, Finkelstein disease in right hand/wrist, thoracic and lumbar spine sprain, bulging lumbrosacral discs and annular tearing, degenerative disc disease, right knee pain and swelling, depression, and anxiety- conditions known to cause the symptoms

the plaintiff complained of to her physicians. The plaintiff also suffered from a host of documented secondary health issues and medication side-effects, which compounded her symptoms from the primary conditions. All that Lincoln can offer to counter this evidence are the opinions of medical consultants who never examined the plaintiff along with cherry-picked phrases from treating physician's records.

45.    Lincoln's final decision failed to make clear findings as to Ms. Blaise's actual residual functional capacity, limitations, and restrictions; failed to articulate its reason for inferring that Ms. Blaise can perform her work full time; failed to perform a proper vocational analysis and failed to give her an opportunity for a full and fair review of her claim.

## CAUSES OF ACTION

## COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

46.    Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

47.    At all times relevant to this action, Ms. Blaise was a participant of the ERISA Policy No. 00001012361400000  ("the Plan") within the meaning of 29 U.S. C. §1002(7), and was eligible to receive disability benefits under the Plan.

48.    As more fully described above, the refusal to pay Ms. Blaise benefits under the Plan for the period from at least on or about July 2010 through the

23

present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Ms. Blaise constitutes an abuse of discretion as its decision was not reasonable and it was not based on substantial evidence.

49.     Ms. Blaise brings this action to recover benefits due to her and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1.     The applicable standard of review in this case is *de novo*.

2.     That the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate *de novo* review;

3.     From at least July 2010 through the present, Ms. Blaise met the Policy's definition of disabled;

4.     Defendant shall pay Ms. Blaise all benefits due for the period from at least July 2010 through the present in accordance with the policy;

5.     Defendant shall pay to Plaintiff such prejudgment interest as allowed by law;

6.     Defendant shall pay Plaintiff's costs of litigation and any and all other reasonable costs and damages permitted by law;

7.     Defendant shall pay attorney's fees for Plaintiff's counsel;

8.     Plaintiff shall receive such further relief against Defendant as  the

Court deems lawful, just and proper.

July 3, 2013

Respectfully Submitted,

_____
Peter H. Burke, Esq.

**OF COUNSEL**:

Peter H. Burke, Esq.
Gregory J. McKay, Esq.
Amanda S. Johns, Esq.
**BURKE HARVEY & FRANKOWSKI, LLC**
One Highland Place
2151 Highland Avenue, Suite 120
Birmingham, Alabama 35205
Phone: 205-930-9091
Fax:   205-930-9054
gmckay@bhflegal.com
pburke@bhflegal.com

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Lincoln National Life Insurance Company
c/o Prentice Hall
57 Adams Avenue
Montgomery, AL 36104-4045